**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-01685-STV

MATTHEW JONES,

　　　Plaintiff,

v.

JOSEPH ARCHULETA,

　　　Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

　　　This matter comes before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [#33] The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment. [##16, 17] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **GRANTS** the Motion with respect to Claim Three and **DENIES** the Motion with respect to Claims One and Two.

**I.　BACKGROUND**

　　　This case arises out of an incident which ended in Plaintiff being shot seven times by Defendant, who was then employed by the Adams County Sheriff's Office. [*See*

*generally* #28]  Plaintiff asserts four claims against Defendant.  First, Plaintiff asserts an unreasonable seizure and excessive force claim in violation of the Colorado Constitution article II, § 7, pursuant to Colo. Rev. Stat. § 13-21-131.  [*Id.* at ¶¶ 56-63]  Second, Plaintiff asserts an unreasonable seizure and excessive force claim in violation of the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.  [*Id.* at ¶¶ 64-73].  Third, Plaintiff asserts a violation of his inalienable right to enjoyment of life under the Colorado Constitution article III, § 3, pursuant to Colo. Rev. Stat. § 13-21-131.  [*Id.* at ¶¶ 74-80]  Fourth, Plaintiff asserts a claim for willful and wanton misconduct.  [*Id.* at ¶¶ 81-86]

On July 18, 2025, Defendant filed the instant Motion under Rule 56 of the Federal Rules of Civil Procedure seeking summary judgment in his favor on each of Plaintiff's first three claims.  [*See* #33]  Plaintiff has responded [#35] and Defendant replied [#37].  This matter is thus ripe for disposition.

## II.    UNDISPUTED MATERIAL FACTS[1]

On May 24, 2022, at approximately 12:28 a.m., Defendant Archuleta was on patrol in Adams County, Colorado.  [#37-1 at ¶ 1]  Defendant was in a vehicle with Deputy Eller, who is not a defendant to this case.  [*Id.*]  Deputy Eller was driving the patrol vehicle and Defendant was in the passenger seat.  [*Id.* at ¶ 2]  Defendant was in the final phase of his field training to become a patrol officer after having worked as a deputy in the Adams County Detention Facility since 2014.  [*Id.* at ¶ 3]  Deputy Eller was assigned as Defendant's Field Training Officer.  [*Id.* at ¶ 4]

---

[1] Consistent with D.C.COLO.LCivR 56.1(1), the Motion includes a statement of proposed undisputed facts in sequentially numbered paragraphs.  [#33-1]  The following facts are undisputed unless otherwise noted.

While on patrol, Defendant noticed a Dodge pickup truck with no license plate.  [*Id.* at ¶ 5]  Defendant did not know who was driving the Dodge pickup truck and, because the truck did not have a rear license plate, Defendant could not determine the identity of the driver by running the license plates.  [*Id.* at ¶ 34]  It was later determined that Plaintiff was the driver of the Dodge pickup truck and that the vehicle was owned by Plaintiff's then-girlfriend.  [*Id.* at ¶ 35]

Deputy Eller activated the patrol vehicle's emergency lights to attempt to stop the pickup truck.  [*Id.* at ¶ 6]  Plaintiff did not stop, accelerated, and kept driving.  [*Id.* at ¶¶ 7-8]  Defendant and Deputy Eller then began pursuing Plaintiff in his vehicle.  [*Id.* at ¶ 9]  The lights and sirens on the patrol vehicle were both activated.  [*Id.* at ¶ 11]

Speeds reached 85-90 miles per hour at certain points during the pursuit.  [*Id.* at ¶ 10]  Stop sticks were deployed to try to stop Plaintiff that caused the tires on his truck to go flat.  [*Id.* at ¶ 12]  Nonetheless, Plaintiff continued driving with the flattened tires.  [*Id.*]  At least four tactical vehicle interventions ("TVIs") were performed in an attempt to stop Plaintiff.  [*Id.* at ¶ 13]  During the pursuit, Plaintiff went the wrong way down the on-ramp and back up the wrong way of the off-ramp and traveled westbound on I-70 in the eastbound lanes of travel.  [*Id.* at ¶¶ 14-15]  While traveling in this manner, Plaintiff did not have his lights on.  [*Id.* at ¶ 16]  Instead, Plaintiff turned the truck lights off in an attempt to evade capture by law enforcement.  [*Id.* at ¶ 17]

In total, the pursuit covered more than 15 miles, beginning near Burton Street and East Colfax Avenue and ending on I-70 heading westbound toward Denver and Aurora.  [*Id.* at ¶ 40]  The pursuit ended when Plaintiff stopped the Dodge pickup truck near a semi-truck with a loaded trailer that was coming to a stop on the shoulder of I-70.  [*Id.* at

¶ 18]  Deputy Eller stopped the patrol vehicle toward the back of the semi-truck.  [*Id.* at ¶ 19]  Defendant exited the patrol vehicle and moved toward the driver's side door of the semi-truck.  [*Id.* at ¶ 20]

Plaintiff stood on the running board of the semi-truck, knocking and banging on the door in attempt to get inside, but was not allowed in by the driver.  [*Id.* at ¶ 21-22]  Defendant gave Plaintiff verbal directives to get off the truck and get on the ground.  [*Id.* at ¶ 24]  Plaintiff got off the semi-truck but did not get on the ground.  [*Id.*]  Defendant was standing approximately five to seven yards from Plaintiff after he got off the semi-truck's driver side steps.  [*Id.* at ¶ 25]  Plaintiff was not in possession or control of a firearm.  [*Id.* at ¶ 41]

Shortly thereafter, Defendant fired seven rounds in rapid succession at Plaintiff.  [*Id.* at ¶ 28]  At the time of the shooting, Defendant knew that Deputy Eller was behind him back at the patrol car.  [*Id.* at ¶ 30]  Defendant's gun magazine held 21 rounds.  [*Id.* at ¶ 31]  Plaintiff admitted that he was trying to get away from Defendant and Deputy Eller.  [*Id.* at ¶ 32]  Plaintiff was aware that he had an active warrant for his arrest at the time of the pursuit.[2]  [*Id.* at ¶ 33]

Related to this incident, Plaintiff was arrested for the felony of vehicular eluding in violation of Colo. Rev. Stat. § 18-9-116.5.  [*Id.* at ¶ 39]  Additionally, on June 5, 2023, in Adams County District Court criminal case number 2022CR1715, Plaintiff pled guilty to two felony counts including vehicular eluding in violation of Colo. Rev. Stat. § 18-9-116.5 and menacing in violation of Colo. Rev. Stat. § 18-3-206.  [*Id.*]  He also pled guilty to one

---

[2] Black gloves were observed, photographed, and collected as evidence from the scene. [*Id.* at ¶ 37]  The black gloves were examined and found to contain probable bullet defects. [*Id.* at ¶ 38]

misdemeanor charge of aggravated motor vehicle theft in the second degree in violation of Colo. Rev. Stat. § 18-4-409(4)(c).  [*Id.*]

## III.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994).  "[T]he summary-judgment burden slightly differs depending on which party bears the ultimate burden at trial."   *Stewart v. Am. Fam. Mut. Ins. Co., S.I.*, 744 F. Supp. 3d 1198, 1200 (D. Colo. 2024).  "A movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim."   *Id.* (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  "Once this movant has met its initial burden, the burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'"   *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "But 'if the moving party has the burden of proof [at trial], a more stringent summary judgment standard applies.'"   Id. (quoting *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008)).  "A moving party who bears the burden at trial 'must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case.'"   *Id.* (quoting *Pelt*, 539 F.3d at 1280).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury.  *See Anderson*, 477 U.S. at 248-49; *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).  Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment "must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

## IV.    ANALYSIS

### A.  Claim One[3]

In his first Claim, Plaintiff alleges that Defendant violated the Colorado Constitution by engaging in an unreasonable seizure and excessive force.   [#28 at ¶¶ 56-63]

---

[3] Plaintiff asserts "willful and wanton misconduct" as his fourth claim for relief.  [#28 at ¶¶ 81-86]  Under the Colorado Governmental Immunity Act ("CGIA"), public employees are "immune from liability in any claim for injury . . . which lies in tort or could lie in tort . . . and which arises out of an act or omission of [a public] employee during the performance of his duties and within the scope of his employment *unless the act or omission causing*

Defendant argues that he is entitled to summary judgment on Claim One because Plaintiff cannot establish that excessive force was used against him.  [#33 at 3-13]

Under Colorado law, "[a] peace officer . . . who, under color of law, subjects . . . any other person to the deprivation of any individual rights that create binding obligations on government actors secured by [the state constitution's] bill of rights . . . is liable to the injured party."  Colo. Rev. Stat. § 13-21-131(1).  The Colorado Constitution declares that "people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures."  Colo. Const. art. II, § 7.  "Qualified immunity is not a defense to liability" for this type of claim.  Colo. Rev. Stat. § 13-21-131(2)(b).

"Section 13-21-131 is similar to 42 U.S.C. § 1983."  *Woodall v. Godfrey*, 553 P.3d 249, 256 (Colo. App. 2024).  "In addition, the Fourth Amendment of the United States Constitution is 'almost identical' to article II, section 7 of the Colorado Constitution."  *Id.* (quoting *People v. Rister*, 803 P.2d 483, 489 (Colo. 1990)).  Accordingly, Colorado courts look to decisions assessing section 1983 excessive force claims when assessing excessive force claims under article II of the Colorado constitution.  *Id.*

"[A]ll claims that law enforcement officers have used excessive force—deadly force or not—in the course of . . . [a] 'seizure' of a free citizen should be analyzed under the . . . 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis

---

*such injury is willful and wanton*."  Colo. Rev. Stat. § 24-10-118(2)(a) (emphasis added). Accordingly, though Plaintiff has asserted willful and wanton misconduct as a separate claim, the argument is more accurately characterized as an argument in anticipation of a defense that Defendant could raise to Plaintiff's state constitutional claims.  *See Woodall v. Godfrey*, 553 P.3d 249, 255 n.1 (Colo. App. 2024).  However, the CGIA does not apply to claims asserted under Section 13-21-131.  *See* Colo. Rev. Stat. § 13-21-131(2)(a). Neither party to this action addresses Claim Four in the Motion or the response to the Motion.  Accordingly, the Court treats Claim Four as an ultimately unnecessary argument in anticipation of a defense that was neither applicable nor raised in this case.

omitted). And "when determining whether the force used to effect a seizure is reasonable under article II, section 7 of the Colorado Constitution, courts should apply the 'objective reasonableness' standard articulated in *Graham*." *Woodall*, 553 P.3d at 257.

Determining whether a seizure is reasonable "requires a careful balancing of 'the nature and quality of the intrusion of the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-139 (1978); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The test of reasonableness . . . is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Nevertheless, proper application of the test "requires careful attention to the facts and circumstances of each particular case, including [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9).

"[T]hese factors are not exclusive, and courts must focus on the totality of the circumstances confronting an officer in each particular case, rather than relying on a mechanically applied test." *Woodall*, 553 P.3d at 257 (citing *Graham*, 490 U.S. at 396). Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight."  *Graham*, 490 U.S. at 396 (citing *Terry*, 392 U.S. at 20-22).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 396-97.

In light of this guidance, the Court applies the *Graham* factors to this case.

### 1.  First *Graham* Factor

First, the Court must assess the severity of the crime at issue.  "[T]he first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent."  *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) (citations omitted); *see also Est. of George v. City of Rifle*, 85 F.4th 1300, 1316 (10th Cir. 2023) (same); *Anderson v. Delcore*, 79 F.4th 1153, 1164 (10th Cir. 2023) (same).  In this case, it is undisputed that the actions Plaintiff took on May 24, 2022, ultimately led to Plaintiff being charged with two felony counts:  vehicular eluding in violation of Colo. Rev. Stat. § 18-9-116.5 and menacing in violation of Colo. Rev. Stat. § 18-3-206.  [#37-1 at ¶ 39]  It is also undisputed that Plaintiff pled guilty to these felonies.[4]  [*Id.*]  Though Plaintiff argues that he was coerced into pleading guilty to these felonies, the evidence cited suggests that Plaintiff particularly took issue with only the menacing count.  [#35-5 at 2-3 (204:18-206:14)]  Indeed, it is undisputed that Plaintiff continued driving when Defendant and Deputy Eller activated the patrol vehicle's lights in an attempt to pull Plaintiff over, drove 85-90 miles per hour at times during the pursuit,

---

[4] Plaintiff also pled guilty to misdemeanor aggravated motor vehicle theft in the second degree in violation of Colo. Rev. Stat. § 18-4-409(4)(c).  [*Id.*]

drove the wrong way down on and off ramps to I-70, turned off the lights of the vehicle he was driving, and continued driving after at least four tactical vehicle interventions were deployed and even after his tires were flattened by stop sticks. [#37-1 at ¶¶ 7, 10-13, 15, 16] Given these undisputed facts, it is difficult to imagine a scenario where Defendant did not suspect Plaintiff of the felony of vehicular eluding. Accordingly, the crime at issue in this case is a felony. Thus, the first *Graham* factor weighs in favor of Defendant.

### 2. Second *Graham* Factor

Second, the Court assesses whether the suspect posed an immediate threat to the safety of Defendant or others. This factor is "undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d 1197, 1215-16 (10th Cir. 2017) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).

In this case, Defendant used deadly force. [#37-1 at ¶ 28] "[D]eadly force is justified only if a reasonable officer in the officer's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others." *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009). Indeed, "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 11. "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.*

In assessing the "degree of threat facing officers," courts within the Tenth Circuit consider the following factors: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile

motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (the "*Larsen* factors"). "The *Larsen* factors are a non-exhaustive list of considerations, not an obligatory checklist, and are 'only aids in making the ultimate determination, which is whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force.'" *Couser v. Somers*, No. 23-3041, 2024 WL 1006794, at *8 (10th Cir. Mar. 8, 2024) (quoting *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015) (second quotation omitted)).  In this case, nearly all of the facts associated with the *Larsen* factors are disputed.  However, because the Motion before the Court is a motion for summary judgment, the Court must view the evidence and draw reasonable inferences in the light most favorable to Plaintiff.  *Garrett*, 305 F.3d at 1216.

As to the first *Larsen* factor, neither party asserts that Defendant ordered Plaintiff to drop a weapon.  However, it appears to be undisputed that Defendant ordered Plaintiff to get off the semi-truck and get to the ground, but Plaintiff did not do so.[5]  [#37-1 at ¶ 24] "If a suspect was given orders and did not comply, this weighs in the officers' favor." *Couser*, 2024 WL 1006794, at *7 (quotation omitted).  Defendant testified that, in response to his commands, Plaintiff "jumped off the truck."  [#33-2 at 25 (158:12-18)]  The driver of the semi-truck described that "when [he] stopped [the semi-truck,] [Plaintiff] fell off [the] truck or he jumped off. [The driver] couldn't really tell."  [#35-3 at 3]  Plaintiff provided a statement that he fell off the semi-truck to the ground when the police vehicle pulled up.  [#35-2 at 2]  Both Plaintiff and the semi-truck driver describe that Plaintiff

---

[5] Plaintiff did not respond to this undisputed fact.  [*See* #35-6 at 9]

attempted to run away from Defendant rather than get to the ground. [*See id.*; #35-3 at 3]  Regardless of these different versions of events, Plaintiff does not appear to dispute that he failed to comply with orders given by Defendant.  Accordingly, this factor weighs in Defendant's favor.

The second *Larsen* factor requires the Court to assess whether any hostile motions were made with a weapon towards the officers.  In this case, it is undisputed that Plaintiff was not armed at the time of the shooting.  [#37-1 at ¶ 41]  However, perceptions as to what occurred in the seconds just prior to the shooting differ drastically.

According to Defendant, when Plaintiff jumped off the truck, he was "squared up" with Defendant.  [#33 at 31 (183:16-20)]  Defendant elaborated that "[Plaintiff's] body, his chest, his face, was facing [Defendant]." [*Id.* at 32 (184:11-12)]  And Defendant testified that, after jumping off the step of the semi-truck, "[Plaintiff] brought his hand up in a manner consistent with him holding a firearm, at which point he began to yell at [Defendant] that 'I'm going to fucking kill you' and various iterations of that as [Plaintiff] was moving." [*Id.* at 27 (170:8-11)]  Thus, according to Defendant, as soon as Plaintiff jumped off the step of the semi-truck, Plaintiff turned toward Defendant and raised his arm.  [*Id.* at 32 (184:1-4)]  And Defendant testified that "it was [his] perception that [Plaintiff] was pointing a firearm at [Defendant]." [*Id.* at 33 (185:13-14)]

Plaintiff, on the other hand, provided a statement that when the police vehicle pulled up to the semi-truck, he fell to the ground and immediately attempted to run away from Defendant.  [#35-2 at 2]  And, according to Plaintiff, at the time he was shot by Defendant, he was running away from Defendant.  [*Id.* at 3]  Plaintiff denied that he made any statement threatening Defendant's life.  [#33-4 at 10]

And Plaintiff's version of events is supported by the semi-truck driver's description of the shooting. According to the truck driver, "[Plaintiff] kinda fell, he was trying to run or something, and then the officer shot him multiple times." [#35-3 at 2] "At the time [Defendant] shot [Plaintiff], [Plaintiff] was running toward the median. [The driver] saw [Defendant] fire the shots. [Defendant] screamed something to [Plaintiff] prior to shooting." [*Id.* at 3] "[Defendant] shot [Plaintiff] as he was struggling to get up off the ground and run toward the median." [*Id.*] "At the moment [Plaintiff] was running away, [the driver did not] think that [Plaintiff's] hands were in his pockets or anything like that. At the moment [Plaintiff] was shot, he was using his hands to try and get up off the pavement and run toward the median." [*Id.*] "He was like crawling, trying to get up, and [the driver thought Plaintiff] was using his hands to crawl and get up and run." [*Id.*] "[Plaintiff] did not run toward [Defendant] at any point. At the time [Defendant] shot [Plaintiff], [Plaintiff] was running toward the median. I think [Plaintiff] was trying to get away." [*Id.* at 4] Thus, both Plaintiff and the driver describe a scene where Plaintiff was fleeing, did not yell anything at Defendant, and did not raise his hand or in any way threaten Defendant prior to being shot.

The Court notes some inconsistencies as to whether Plaintiff may have been wearing gloves, which could have caused Defendant to believe that Plaintiff had a weapon. Plaintiff's statement indicated that he was not wearing gloves, was unarmed, and did not have any kind of black object in his hands which could have been mistaken for a weapon. [*Id.*] Plaintiff additionally stated in testimony that he "was not wearing gloves." [#35-5 at 1 (145:14-15)] During that same deposition, however, Plaintiff was provided with a hypothetical that black gloves were identified at the scene of the shooting

with a hole in them, and he responded: "if there was gloves with a hole in them, then I guess I was wearing them."    [*Id.* (145:22-146:2)] Nonetheless, the Court finds this inconsistency is better left for impeachment before a jury, and that a reasonable jury could believe Plaintiff's statement that he was not wearing gloves, was unarmed, and did not have any kind of black object in his hands—especially given the lack of any forensic evidence presented to the Court that the gloves found at the scene were Plaintiff's gloves. And even if Plaintiff was wearing gloves, this fact alone does not lead the Court to necessarily conclude, as a matter of law, that any reasonable officer in Defendant's position would believe that Plaintiff had a weapon.  Again, this question is better suited for a jury.

The Court thus finds that Plaintiff has provided sufficient evidence that he did not make a threatening gesture toward Defendant and instead proceeded to attempt to flee as soon as Defendant arrived near the semi-truck.  Accordingly, this factor weighs in favor of finding a lack of an immediate threat for the purpose of this Motion and the Court finds that there is a genuine dispute of material fact as to the second *Larsen* factor.[6]

The third *Larsen* factor requires the Court to assess the distance separating Defendant and Plaintiff at the time of the shooting.  It is undisputed that this distance was

---

[6] Defendant contends that "[i]t is not [Plaintiff's] subjective intent, or personal perception that he was not a danger to anyone, or even the possible perceptions of a third-party witness to only a part of the incident that must be taken into consideration by the court." [#37 at 5]  Instead, Defendant argues that "courts must look at the information known to [Defendant] at the time" of the shooting in light of what Defendant "knew and perceived" to determine whether the force used was reasonable.  [*Id.*]  This is true as far as it goes. But a reasonable jury could conclude from the testimony of Plaintiff and the truck driver that no reasonable officer could believe that Plaintiff posed a danger to Defendant or anyone else because Plaintiff was fleeing from the officer, did not have a weapon or anything that could be perceived as a weapon, and did not threaten anyone.

between 15 and 21 feet.  [#37-1 at ¶ 25]  The Tenth Circuit has held a distance between seven and 20 feet heightens the immediacy of danger and can support a finding of objective reasonableness of the use of deadly force.  *Palacios v. Fortuna*, 61 F.4th 1248, 1260 (10th Cir. 2023) (citing *Larsen*, 511 F.3d at 1260-61).   This danger is particularly immediate when a defendant officer lacks cover from a possible attack by a plaintiff.  *Id.* Indeed, the Tenth Circuit has previously held that a distance as great as 35 feet may support a finding of an immediate safety threat.  *Alcala v. Ortega*, 128 F.4th 1298, 1312 (10th Cir. 2025).  And here, neither party argues that Defendant had a nearby location in which he could have taken cover.  Accordingly, this factor favors Defendant.[7]

The fourth *Larsen* factor requires the Court to assess the manifest intentions of the suspect.  This factor requires an assessment of "how a reasonable officer on the scene would have assessed the manifest indicators of [a plaintiff's] intentions."  *Cruz v. City of Deming*, 138 F.4th 1257, 1269-70 (10th Cir. 2025) (quoting *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 770 (10th Cir. 2021)).  "It is not what [a plaintiff] 'subjectively intended,

---

[7] On the other hand, it could be argued that the third *Larsen* factor weighs in favor of Plaintiff because he was running away from the officers and thus increasing the distance between them.  In *Estate of George v. City of Rifle*, the suspect was armed with a gun but was running away from the officers. 85 F.4th 1300, 1318 (10th Cir. 2023).  The Tenth Circuit acknowledged that "there was not a close-range confrontation" between the suspect and the officers, but "conclude[d] that [it] must modify the physical distance factor to take into account other considerations relevant to th[e] case" including the fact that the suspect was close to the general public and had easy access to locations that would have provided him with cover from the officers. *Id.* at 1318-19. Thus, the court in *George* found that this third factor weighed in favor of the officers. *Id.* at 1319.  In contrast to *George*, however, and as explained above, a reasonable juror could conclude that Plaintiff did not have a weapon or anything that could be perceived as a weapon.  Thus, it could be argued that the third *Larsen* factor supports Plaintiff's claim as Plaintiff was trying to increase the distance between himself and the officers.  But Plaintiff, who did not even evaluate the *Larsen* factors, does not make this argument and it is not the Court's role to advance arguments for a party.

be it with his hand movements or otherwise.'" *Id.* at 1270 (quoting *Est. of Taylor*, 16 F.4th at 770).

This factor has been found to favor a plaintiff when the plaintiff, at the time of the application of force, had an intent to flee and posed no other threat. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1303 (10th Cir. 2025). Viewing the facts in the light most favorable to Plaintiff, a reasonable officer would have known that Plaintiff's manifest intention was to flee when he ran away from Defendant. Plaintiff had been evading Defendant and Deputy Eller in his vehicle for more than 15 miles of pursuit prior to the shooting. [#37-1 at ¶ 40] Further, the third-party witness to this incident testified that his perception of Plaintiff's conduct just prior to the shooting was that Plaintiff "was trying to get away." [#35-3 at 4] Based on photographs of the scene, it appears that Plaintiff's flight would have been into a rural area, not an area filled with people or buildings. [#33-6] For purposes of this Motion, the Court finds that Plaintiff's manifest intention was not to harm Defendant or any other individual when he fell and pushed himself up in an apparent effort to continue fleeing from Defendant and Deputy Eller. Accordingly, this factor weighs in favor of Plaintiff.

Considering all the *Larsen* factors together, the Court finds that the second *Graham* factor weighs in Plaintiff's favor. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff was attempting to flee from Defendant at all times when Defendant was outside of his vehicle. And viewing the evidence in the light most favorable to Plaintiff, a reasonable officer could not have thought otherwise. "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471

U.S. at 11.   Here, a reasonable jury could conclude that Plaintiff never threatened Defendant or others, he was running away from Defendant toward an open road median, and he did not have his hands in a location which would be either threatening or indicate that he possessed a weapon.   Under these facts, a reasonable jury could conclude that no reasonable officer would have believed that Plaintiff posed an immediate threat to Defendant or others, and thus the second *Graham* factor weighs in favor of Plaintiff.

### 3.  Third *Graham* Factor

Third, the Court assesses whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight.   This factor requires an assessment of whether "'an objectively reasonabl[e] officer could conclude, based on the facts and circumstances surrounding the situation,' that the suspect knew that he was being pursued by the police." *Palacios*, 61 F.4th at 1257 (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1133 (10th Cir. 2020)).   It is undisputed that Plaintiff took the actions he did on May 24, 2022 for the purpose of evading Defendant and Deputy Eller.   [#37-1 at ¶ 32]  Plaintiff explicitly testified that he traveled at speeds of about 85 miles per hour to try to "get away."   [#33-5 at 10 (117:6-13)]  It is undisputed that Deputy Eller and Defendant had been using both the lights and the sirens on their patrol vehicle when pursuing Plaintiff.   [#37-1 at ¶ 11]  In fact, Plaintiff's tires had been flattened by stop sticks deployed by officers and multiple TVIs had been used to get Plaintiff to stop driving.   [*Id.* at ¶¶ 12-13]  It is also undisputed that Defendant gave Plaintiff verbal commands when the patrol vehicle arrived at the location of the semi-truck.   [*Id.* at ¶ 24]  Therefore, a reasonable officer would conclude that Plaintiff knew he was being pursued by police and was attempting to evade arrest. Accordingly, the third *Graham* factor weighs in favor of Defendant.

### 4. Conclusion

The Court recognizes that, in balancing the *Graham* factors, whether Defendant's use of deadly force was objectively reasonable is a very close call.  However, the *Graham* factors are not exclusive, and the Court must make an assessment as to objective reasonableness based on the totality of the circumstances.  *Woodall*, 553 P.3d at 257 (citing *Graham*, 490 U.S. at 396).  Viewing the facts in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether a reasonable officer on the scene could have perceived Plaintiff as a sufficient threat to the officer or others such that the use of deadly force was warranted.

It is true that "[a] reasonable perception of imminent danger, even if mistaken, may be consistent with the reasonable use of deadly force."  *Est. of Ronquillo by & through Est. of Sanchez v. City and Cnty. Of Denver*, 720 F. App'x 434, 439 (10th Cir. 2017) (citing *Thomas v. Durastanti*, 607 F.3d 655, 666 (10th Cir. 2010)).  However, there is a material dispute in this case as to whether Defendant could have reasonably perceived a danger to himself or any other individual at the time he shot Plaintiff.  Officers may need to make split second judgment calls in uncertain situations.  *Graham*, 490 U.S. at 396-97.  Nonetheless, "a police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11.

The facts viewed in the light most favorable to Plaintiff paint a picture of an individual driving with no license plates who at all times after Defendant and Deputy Eller began pursuing him acted in a manner to evade the officers.  At the time of the shooting, Plaintiff and the semi-truck driver describe Plaintiff's actions as yet another attempted flight from Defendant and Deputy Eller.  Plaintiff has provided evidence that he at no point

threatened Defendant, possessed any weapon, or made any motion which would suggest that he possessed a weapon.   Rather, Plaintiff fled and continued to attempt to flee throughout this entire incident on May 24, 2022.  In such circumstances, the Court cannot find that it was objectively reasonable for Defendant to use deadly force as a matter of law.  Accordingly, summary judgment is not appropriate and the Motion is DENIED with respect to Claim One.

### B. Claim Two

In his second Claim, Plaintiff alleges that Defendant violated the United States Constitution by engaging in an unreasonable seizure and excessive force.  [#28 at ¶¶ 64-73]  Under federal statute, state officers who "subject[ ], or cause to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Defendant argues that he is entitled to summary judgment on Claim Two because Plaintiff has not established that excessive force was used and, in any event, Defendant is entitled to qualified immunity.  [#33 at 3-15]

As previously described, courts apply the *Graham* factors when assessing an excessive force claim pursuant to Section 1983.   The reasonableness analysis undertaken as to Claim One is thus equally applicable to Claim Two.  Accordingly, the Court finds that Plaintiff has provided adequate evidence to create a genuine dispute of material fact as to whether Defendant used excessive force in violation of the United States Constitution when shooting Plaintiff seven times on May 24, 2022.

However, unlike when defending against Colorado state constitutional claims, state officers may assert qualified immunity when defending against a claim brought

pursuant to Section 1983.  When the qualified immunity defense is raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  "A plaintiff may satisfy [the clearly established] standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"[8]  *Id.* at 1005 (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).

Nevertheless, a plaintiff "need not locate a *perfectly* on-point case."  *Id.* (citing *Weise*, 593 F.3d at 1167).  "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  Still, courts may "not . . . define clearly established law at a high level of generality."  *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (quotation omitted).  This directive "is particularly important in excessive force cases."  *Id.*  "'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'"  *Tolan*, 572 U.S. at 656 (quoting *Hope*, 536 U.S. at 741).  "When properly applied, [qualified immunity] protects 'all but the plainly

---

[8] Once qualified immunity has been asserted, it is the plaintiff's burden to show both that they have alleged a constitutional violation and that that violation was clearly established. *Bledsoe v. Carreno*, 53 F.4th 589, 606, 617 n.25 (10th Cir. 2022).  The Tenth Circuit, however, has recently instructed that a court must independently "use its full knowledge of its own [and other relevant] precedents" in engaging in a qualified immunity analysis. *Jordan v. Jenkins*, 73 F.4th 1162, 1174 n.10 (10th Cir. 2023) (quotation omitted).

incompetent or those who knowingly violate the law.'"  *Ashcroft*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Relevant here, "[t]here is no question that the general principle governing the use of force is clearly established: deadly force is justified only if a reasonable officer in the officer's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others."  *Cordova*, 569 F.3d at 1192.  Beyond this general principle, Plaintiff cites to two cases that the Court finds instructive on the qualified immunity analysis: *King v. Hill* and *Walker v. City of Orem*.  [#35 at 9-10]

In *King*, a defendant police officer fired shots at the plaintiff when responding to a complaint that the plaintiff was making threats and had broken a water line.  *King v. Hill*, 615 F. App'x. 470, 471 (10th Cir. 2015).[9]  The plaintiff did not obey police commands to "come out" from the house doorway he was standing near and "talk."  *Id.* at 472.  One police officer alleged that the plaintiff threatened to kill the officers, though this account was not shared by all witnesses.  *Id.*  One witness testified that the plaintiff was not making any threatening gestures and was just standing near the doorway of the house.  *Id.*  When the plaintiff raised his hands, which were holding some sort of jacket, the defendant police officer shot plaintiff.  *Id.*

---

[9] *King* is an unpublished opinion.  "An unpublished opinion . . . provides little support for the notion that the law is clearly established on a point."  *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (quoting *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007)); *see also Knopf v. Williams*, 884 F.3d 939, 947 (10th Cir. 2018) (same); *Burke v. Pitts*, 157 F.4th 1326,  (10th Cir. 2025) (agreeing with the defendants that unpublished decisions from the Tenth Circuit cannot clearly establish law).  Accordingly, *King* alone cannot clearly establish that Defendant's conduct was unconstitutional.  Nonetheless, as described herein, *King* cites to published opinions to explain the court's rationale for concluding that the defendant's actions violated clearly established law.  The *King* court's analysis of those cases is helpful in assessing whether prior published cases clearly establish the unconstitutionality of Defendant's actions here.

The *King* court found that it was clearly established that a reasonable officer under the circumstances presented in *King* would have understood that shooting the plaintiff was unconstitutional deadly force in violation of the Fourth Amendment.  *Id.* at 479.  The court's reasoning involved several published cases that help to inform the clearly established analysis here.  First, the *King* court found that *Garner* "supplies a foundational principle concerning the limits on the use of deadly force against unarmed suspects."  *Id.* at 477.  This foundational principle establishes that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead."  *Id.* (quoting *Garner*, 471 U.S. at 11).

Second, the *King* court cited to *Walker*, a case in which police officers responded to reports that an individual was suicidal and had stolen a vehicle.  *Walker v. City of Orem*, 451 F.3d 1139, 1144 (10th Cir. 2006).  When officers identified the plaintiff's car, they identified themselves as police and ordered the plaintiff to stop.  *Id.* at 1157.  The plaintiff did not stop, instead backing up the vehicle, nearly hitting one of the police officers, and driving through a ditch.  *Id.*  The police officers continued to pursue the plaintiff as he ran stop signs.  *Id.*  The pursuit ended when the plaintiff pulled into a driveway at the front of his family's residence.  *Id.*

The plaintiff got out of his car and "moved away at something between a walk and a jog."  *Id.* at 1158.  As the officers got out of their patrol vehicle, the plaintiff drew a knife out of his pocket and held it to his wrist approximately 21 feet away from one of the officers.  *Id.*  Witnesses began shouting that the plaintiff did not have a gun.  *Id.*  The plaintiff turned as if he were going to take off running from the officers.  *Id.*  One of the officers then proceeded to shoot the plaintiff, later testifying that he believed the plaintiff

had a gun.  *Id.*  The court found that the officer that shot the plaintiff was not entitled to qualified immunity.  *Id.* at 1160.

When viewing the facts in the light most favorable to Plaintiff, *Walker* is quite similar to this case. Like in *Walker*, Plaintiff was fleeing from Defendant and Deputy Eller in his vehicle despite not originally being suspected of a serious crime.  [*See* #37-1 at ¶¶ 5, 17] When Defendant got out of his patrol vehicle and approached Plaintiff, Plaintiff began to move away from the vehicle and away from the officers.  [##35-3 at 3; 35-2 at 3]  Like in *Walker*, Defendant was potentially around 21 feet away from Plaintiff at the time of the shooting.  [#37-1 at ¶ 25]  Unlike in *Walker*, Plaintiff neither possessed nor brandished any weapon, making Plaintiff's excessive force claim even stronger than that in *Walker*. [*Id.* at ¶ 41]  Like in *Walker*, a witness stated that he did not see Plaintiff make any threatening gesture toward Defendant.  [#35-3 at 3-4]  Like in *Walker*, witness testimony indicated that Plaintiff was attempting to flee from Defendant at the time of the shooting. [*Id.* at 2-4]  Thus, the principles of *Walker* would inform a reasonable officer that it is a violation of the Fourth Amendment to shoot an individual who has acted only to evade police officers after a traffic stop is initiated and who presents no threat to any other individual.

And the application of *Walker* to the present circumstances is only strengthened by the principle illuminated by *Garner*: it is unconstitutional to shoot fleeing suspects who pose no apparent danger to anyone.  *Garner*, 471 U.S. at 11.  Viewing the facts in the light most favorable to Plaintiff, Plaintiff was exactly this: a fleeing suspect who posed no apparent danger to anyone, similar to the fleeing plaintiff in *Walker*.  Accordingly, the

Court finds that Defendant is not entitled to qualified immunity as to Claim Two.  Thus, the Motion is DENIED with respect to Claim Two.

### C.  Claim Three

In his third Claim, Plaintiff alleges that Defendant violated the Colorado constitution by violating his inalienable right to enjoyment of life.  [#28 at ¶¶ 74-80]  Defendant argues that he is entitled to summary judgment on Claim Three for several reasons, including that plaintiff has not asserted an established constitutional right that created a binding obligation on Defendant.  [#33 at 15-18]  Plaintiff does not address this argument or provide any evidence in support of his third Claim in his Response.  [#35]

"A plaintiff's failure to address her asserted claim in a response to a motion for summary judgment is proper grounds to grant summary judgment in the defendant's favor." *Pittman v. Wakefield & Assocs., Inc.*, No. 16-cv-02695-RBJ-KMT, 2017 WL 5593287, at *5 (D. Colo. Nov. 21, 2017) (citing *Hinsdale v. City of Liberal*, 19 F. App'x 749, 768-69 (10th Cir. 2001); *Todd v. USAA Gen. Indem. Co.*, 713 F. Supp. 3d 1088, 1097 (D. Colo. 2024) (same).  Accordingly, because Plaintiff has not responded to the Motion with respect to Claim Three, the Motion is GRANTED as to Claim Three.

## V.    CONCLUSION

For the foregoing reasons, the Motion [#33] is **GRANTED** with respect to Claim Three and **DENIED** with respect to Claims One and Two.

DATED: December 3, 2025                    BY THE COURT:

                                           s/Scott T. Varholak
                                           United States Magistrate Judge